# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:18-cv-00240-MR-DLH

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| RANDY McKINNEY, CHRISTINA ) | |
| McKINNEY, HAYDEN McKINNEY, ) | |
| TRACY HODGE-COGDELL, JOHN ) | |
| ADAM GIBBS, AMANDA ) | |
| WHITTEMORE, and CRM ) | |
| INSURANCE SERVICES INC., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court upon the Plaintiff's Emergency Motion for Entry of Temporary Restraining Order [Doc. 8].

## I.  PROCEDURAL BACKGROUND

On August 23, 2018, the Plaintiff Allstate Insurance Company ("Allstate") initiated this action against the Defendants Randy McKinney, Christina McKinney, Hayden McKinney, Tracy Hodge-Cogdell ("Hodge-Cogdell"), John Adam Gibbs ("Gibbs"), Amanda Whittemore ("Whittemore"), and CRM Insurance Services Inc. ("CRM Insurance"), asserting claims for breach of contract, misappropriation of trade secrets, and tortious

interference with business relationships. [Doc. 1]. On August 27, 2018, the Plaintiff filed the present motion seeking the immediate issuance of a temporary restraining order enjoining Christina McKinney, Hayden McKinney, Hodge-Cogdell, Gibbs, Whittemore, and CRM Insurance from misuing Allstate's confidential information and compelling the return of all Allstate confidential information and property. Allstate also seeks to enjoin Hayden McKinney, Hodge-Cogdell, Gibbs, and Whittemore from soliciting the purchase of products or services competitive with those sold by Allstate from any office of business site located within one (1) mile of the Randy McKinney Agency. [Doc. 8]. In support of its motion, Allstate has submitted the Declaration of Jeff Koman, an Allstate Territorial Sales Leader in North Carolina, who is familiar with Allstate's business practices. [Doc. 9-1].

## II. FACTUAL BACKGROUND

The evidence presented in the Plaintiff's Verified Complaint and the Declaration of Jeff Koman show the following.

Allstate provides automobile insurance, property and casualty insurance, life insurance, and financial services and products to individuals and businesses nationwide. To provide these products and services, Allstate appoints independent exclusive agents ("Exclusive Agents"),

through its Exclusive Agency Program.  Exclusive Agents in turn employ individuals as "Service Providers," who work with Exclusive Agents to sell Allstate products and services.  Defendant Randy McKinney became an Exclusive Agent for Allstate in 2004 and opened the Randy McKinney Agency.  Defendants Christina McKinney, Hayden McKinney, Hodge-Cogdell, Gibbs, and Whittemore were all formerly employed as Service Providers for the Randy McKinney Agency.  Christina McKinney began her employment in 2007, and left the Randy McKinney Agency in December 2012.  Hayden McKinney, Hodge-Cogdell, Gibbs, and Whittemore (collectively, the "Service Providers") all left the employment of the Randy McKinney Agency on June 25, 2018, having started on various dates between 2008 and 2017.

Allstate customers entrust Allstate and its Exclusive Agents and Service Providers with a variety of private and confidential information, including the customers' dates of birth, social security numbers, types of policies, amount of insurance, premium amounts, description and location of assets and property, claims histories, insurance and financial needs, pricing information, and other insurance and financial information.  To protect its customers' privacy and to maintain a competitive advantage in the highly

competitive insurance and financial services business, Allstate requires Exclusive Agents and Service Providers to execute written agreements pursuant to which they: acknowledge that such customer information constitutes Allstate's confidential information and property; promise to not disclose such customer information to anyone not authorized to receive it; and promise that they will not use Allstate's customer information for their own benefit or for any improper purpose. Pursuant to such agreements, both Exclusive Agents and Service Providers also agree, upon termination of their relationship with Allstate, to continue treating Allstate's customer information as confidential; to not disclose, either directly or indirectly, Allstate's customer information to any third party; and to immediately return all Allstate's customer information to Allstate.

In addition to agreeing to certain confidentiality provisions, the Service Providers' agreements include a non-competition clause. In the case of the Service Providers employed by the Randy McKinney Agency, these agreements provided that, for one (1) year following the termination of their employment, the Service Providers would not solicit the purchase of products or services competitive with those sold by Allstate:

> 1. With respect to any person, company, or organization to whom the Randy McKinney Agency

sold insurance or other products or services to on behalf of Allstate and who is a customer of Allstate at the time of the termination of the Agreement;

2. With respect to any person, company, or organization who is a customer of Allstate at the time of the termination of the Agreement and whose identity was discovered by them as a result of their access to Allstate's confidential information; or

3. From any office or business site located within one (1) mile of where Randy McKinney solicited or sold Allstate insurance or other products or services during the year immediately preceding the termination.

Allstate alleges that in or around February 2018, an Allstate customer sent Allstate a letter stating that he thought all of his insurance policies were obtained through the Randy McKinney Agency, but that he had discovered that his commercial policy was obtained through CRM Insurance, a competitive insurance agency started by Christina McKinney after she left the Randy McKinney Agency in December 2012. The customer provided Allstate with the declarations page for said CRM commercial policy, which was printed on an Allstate letterhead and dated June 22, 2012. Allstate has not submitted these documents as part of the record, but rather merely characterizes the documents in its Verified Complaint.

Following receipt of the Allstate customer's complaint, Allstate alleges that it conducted a review of the Allstate email accounts associated with Randy McKinney and the active Service Providers in his employ (including Hayden McKinney, Whittemore, Gibbs, and Hodge-Cogdell), which Allstate alleges resulted in the discovery of numerous emails between Randy McKinney, his Service Providers, and Christina McKinney at her CRM Insurance email address, in which Allstate's customer information, including customer names, addresses, dates of birth and drivers' license numbers were being disclosed to Christina McKinney. In its Verified Complaint, Allstate characterizes one such example of an email forwarded from Christina McKinney to Randy McKinney from SignNow (mail@signnow.com), which is not an approved vendor for Allstate customer signatures. An attachment to the email is alleged to contain an Allstate Uninsured Motorist form and the last page of an Allstate application, both signed by an Allstate customer, in which Randy McKinney was listed as the Exclusive Agent and Christina McKinney as the Service Provider. Allstate does not allege the date of this email or the documents, and provides no actual documentary evidence thereof, rather relying on the characterization of such documents in the Verified Complaint.

On June 25, 2018, Allstate terminated the Exclusive Agency Agreement with Randy McKinney.  Allstate further terminated the employment of Hayden McKinney, Hodge-Cogdell, Gibbs, and Whittemore as Service Providers.  Following the termination of their employment, the Service Providers became employed by CRM Insurance, which is located in the same shopping center as the former Randy McKinney Agency.

Allstate alleges, upon information and belief, that the Service Providers took Allstate's customer information when their employment was terminated and have been using that information to solicit Allstate customers for CRM Insurance.  Allstate further alleges upon information and belief, that several of Allstate's customers have canceled their insurance coverage with Allstate and instead have become customers of CRM Insurance.  Allstate alleges that it has demanded the return of its confidential information and property from the Defendants, but that to date they have refused to comply.

## IV. DISCUSSION

A plaintiff seeking preliminary injunctive relief must demonstrate that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm absent injunctive relief, (3) the balance of equities tips in its favor, and (4) the injunction would be in the public interest.  Winter v. Natural Res. Def.

7

Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." Id. at 24. Thus, in each case the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). Ultimately, a plaintiff's entitlement to preliminary injunctive relief is a matter of discretion with the Court. See Metropolitan Reg'l Info. Sys., Inc. v. American Home Realty Network, Inc., 722 F.3d 591, 595 (4th Cir. 2013).

Here, Allstate asserts breach of contract claims against Christina McKinney and the Service Providers arising out of these Defendants' alleged use of Allstate's customer information for their own benefit. Allstate further asserts claims for breach of contract against the Service Providers for their failure to comply with the restrictive covenants set forth in their employment agreements. Allstate, however, has failed to show that it is likely to prevail on the merits of these claims. Allstate has not provided any actual evidence that these Defendants have used any of Allstate's customer information in a manner that violates the parties' written agreements. In paragraph 61 of the Verified Complaint, Allstate alleges that in February 2018, one of its customers reported that, unbeknownst to him, one of his Allstate insurance

policies had been obtained through CRM Insurance and not the Randy McKinney Agency. This allegation, however, is not admissible evidence of any wrongdoing; it is hearsay, and at best is admissible as notice to Allstate that it needed to investigate the situation. Allstate has not presented any affidavit from this customer or any of the documents which would support the customer's claim.

In paragraph 62 of the Verified Complaint, Allstate alleges that it conducted a review of thousands of email communications between Randy McKinney, the Service Providers, and CRM Insurance and discovered "numerous emails" in which Allstate customer information was being disclosed to Christina McKinney. Allstate has not produced any actual evidence of these email exchanges, however. Rather, it characterizes only one email as including an Allstate Uninsured Motorist form and the last page of an Allstate Application signed by an Allstate customer. That email has not been produced to the Court and has in no way been authenticated. Allstate has not even alleged when that email was sent. Accordingly, the allegations of paragraph 62 cannot be considered evidence of any wrongdoing on the part of the Defendants.

The Service Providers' agreements with Allstate prohibit the Service Providers in the event of their termination from soliciting Allstate customers, using Allstate customer information to solicit business, or soliciting insurance business within one mile of the location where the Randy McKinney Agency had operated for the year prior to their termination. Neither the Verified Complaint nor the Koman Declaration, however, offer any evidence of any use of confidential information or solicitation of *any* customers (Allstate or otherwise) by the Service Providers. Instead, Allstate relies upon a series of conclusory allegations that such solicitation has occurred "upon information and belief."[1] Preliminary injunctive relief cannot be granted on such vague allegations; a plaintiff must produce actual and specific evidence to support its request for extraordinary relief. Allstate's conclusory averments based "upon information and belief" are no substitute for evidence. See In re Lilley, No. 10-81078C-130, 2011 WL 1428089, at *3 (Bankr. M.D.N.C. Apr. 13, 2011) (stating that conclusory allegations based on information and belief

---

[1] Also notably absent from even Allstate's allegations is any assertion that these non-compete agreements were executed contemporaneously with the commencement of employment or supported by separate consideration, as required by North Carolina law. See Hejl v. Hood, Hargett & Assocs., Inc., 196 N.C. App. 299, 304, 674 S.E.2d 425, 428 (2009).

are "an inadequate substitute for providing detail as to why the element is present in an action").[2]

Turning to the second factor of the <u>Winter</u> analysis, the Court concludes that Allstate has failed to demonstrate that it is likely to suffer irreparable injury absent immediate injunctive relief. The Court notes that, of the incidents asserted by Allstate as constituting improper conduct by the Defendants, one incident (the policy obtained through CRM Insurance for an Allstate customer) occurred over six years ago, in 2012. Allstate by its own admission learned of this incident in February 2018, more than six months prior to the filing of the Verified Complaint. As for the other incident (an email disclosing an Allstate application to Cynthia McKinney), it is unclear from Allstate's filings when Allstate claims this occurred. In any event, however, Allstate terminated its relationship with the Randy McKinney Agency and its Service Providers on June 25, 2018, nearly two months prior to the Complaint's filing. Allstate's delay in seeking the requested relief, taken with

---

[2] Because Allstate has failed to present a sufficient forecast of evidence to demonstrate that Allstate customers were actually solicited or that any trade secrets were actually taken or used, the Court concludes that Allstate has failed to show that it is likely to prevail on its claims of tortious interference with business relationships and misappropriation of trade secrets as well.

11

the lack of any actual evidence to support its claims, indicates that any injury suffered would not be irreparable absent immediate injunctive relief.

Moreover, while a showing of a permanent loss of customers or loss of good will may be sufficient to establish irreparable injury, see Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th Cir. 1994), abrogated on other grounds by Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008), Allstate has not made an adequate showing of such loss here. At most, Allstate has shown that the Service Providers were terminated from an Allstate agency and began working at a competing agency. Allstate has not produced any evidence to support its conclusory assertions that the Service Providers actually solicited Allstate customers once their employment had ended.

Turning now to the third and fourth Winter factors, the Court finds that the balance of equities tips in the Defendants' favor and that the requested relief would not be in the public interest. Allstate seeks to enjoin its former agent and service providers in their efforts to compete against Allstate in the insurance and financial services market. Allstate has failed, however, to make such a sufficient showing that such competition is unlawful or otherwise in breach of the parties' agreements. A temporary restraining

order enjoining what otherwise appears to be legitimate competition would not be equitable to the Defendants or serve any legitimate public interest.

Considering all these factors, and balancing the competing interests of the parties, the Court concludes that Allstate's motion for a temporary restraining order should be denied.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Emergency Motion for Entry of Temporary Restraining Order [Doc. 8] is **DENIED**.

**IT IS SO ORDERED.**

Signed: August 31, 2018

Martin Reidinger
United States District Judge